WDM/DCG/CKD: USAO 2018R00313

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** |
| | * | |
| **JAIRO ARNALDO JACOME,** | * | **(Conspiracy to Interfere with** |
| **a/k/a "Abuelo," and** | * | **Interstate Commerce by** |
| **GERDANDINO DELGADO-** | * | **Extortion, 18 U.S.C. § 1951(a);** |
| **ESCOBAR,** | * | **Forfeiture, 18 U.S.C. § 981(a)(1)(C),** |
| **a/k/a "Pumba"** | * | **28 U.S.C. § 2461(c))** |
| | * | |
| **Defendants** | * | |
| | * | |

\*\*\*\*\*\*\*

### INDICTMENT

### COUNT ONE
### (Conspiracy to Interfere with Interstate Commerce by Extortion)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

1.     *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was an international criminal enterprise that was active throughout the United States.  In the Washington, D.C. metropolitan area, including in Prince George's County, Maryland, MS-13 generated income from various sources, including the extortion of sums of money from persons who engaged in business activities such as controlled substances sales, illegal brothels, and unlicensed "stores" where items such as food, alcoholic beverages, and cigarettes were sold, as well as legitimate businesses including food and beverage sales or distributors.  Members of the gang often referred to these extortion payments as "rent."

2.      MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.  Cliques operated under the umbrella rules of MS-13.  MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.

3.      **JAIRO ARNALDO JACOME, a/k/a "Abuelo,"** and **GERDANDINO**

**DELGADO-ESCOBAR, a/k/a "Pumba,"** were members and associates of MS-13 and the Langley Park Salvatruchas ("LPS") clique of MS-13.

4.      Victim-1, Victim-2 and Victim-3 operated businesses in Langley Park, Maryland that affected interstate commerce.

### The Conspiracy

5.      Beginning at least in or around March 2013, and continuing through at least in or around April 2018, in the District of Maryland and elsewhere, the defendants,

**JAIRO ARNALDO JACOME,**
**a/k/a "Abuelo," and**
**GERDANDINO DELGADO-ESCOBAR,**
**a/k/a "Pumba,"**

did knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to obstruct, delay, and affect commerce and the movement of any article and commodity in commerce by extortion, as those terms are defined in 18 U.S.C. § 1951, to wit, the defendants conspired to obtain the property of Victim-1, Victim-2, and Victim-3, with Victim-1's, Victim-2's, and Victim-3's consent induced by the wrongful use of actual and threatened force, violence, and fear.

## Manner and Means of the Conspiracy

6.      It was part of the conspiracy that **JACOME**, **DELGADO-ESCOBAR**, and others known and unknown to the Grand Jury, planned to and did extort business owners, including Victim-1, Victim-2, and Victim-3, in Langley Park, Maryland by extracting weekly extortion payments known as "rent" from those business owners for operating in territory controlled by the MS-13 LPS clique.

7.      It was further part of the conspiracy that **JACOME** and others known and unknown to the Grand Jury threatened harm to the business owners if the business owners did not make "rent" payments to **JACOME** and other MS-13 LPS clique members.

## Overt Acts

8.      During the course of and in furtherance of the conspiracy, and to affect the objects thereof, **JACOME**, **DELGADO-ESCOBAR**, and others known and unknown to the Grand Jury, caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

a.      In or around 2013, **JACOME** told Victim-1 that Vicitm-1 must pay "rent" to **JACOME** for Victim-1's business and that **JACOME** was a member of the LPS clique.

b.      In or around 2015, **JACOME** threatened Victim-2 with a gun, grabbed Victim-2 by the neck and hit Victim-2, telling Victim-2 that **JACOME** was a member of the "Mara" and that Victim-2 was required to pay "rent" to **JACOME** for Victim-2's business or else **JACOME** would send people to kill Victim-2's family.

       c.      In or around 2017, **JACOME** threatened to have Victim-3 beaten up and Victim-3's teeth knocked out for calling **JACOME** to complain about threats **JACOME** made to Victim-2.

       d.      In or around 2017, **DELGADO-ESCOBAR** took extortion payments known as "rent" from Victim-1 on behalf of **JACOME** and the LPS clique.

18 U.S.C. § 1951(a)

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendants' convictions on Count One of this Indictment.

2.      As a result of the offense alleged in Count One of this Indictment, the defendants,

**JAIRO ARNALDO JACOME,**
**a/k/a "Abuelo," and**
**GERDANDINO DELGADO-ESCOBAR,**
**a/k/a "Pumba,"**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

     a.      cannot be located upon the exercise of due diligence;

     b.      has been transferred or sold to, or deposited with, a third person;

     c.      has been placed beyond the jurisdiction of the Court;

     d.      has been substantially diminished in value; or,

     e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)

_Robert K. Hur / WDM_

Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: April 18, 2018